**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LONNIE LUPARDUS,** | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| **v.** | ) | **No. 26-2386-KHV** |
| **ILIANA MIELCAREK, et al.** | ) | |
| **Defendants.** | ) | |

**MEMORANDUM AND ORDER**

On May 26, 2026, in the District Court of Johnson County, Kansas, Lonnie Lupardus filed a pro se Petition For Damages And Civil Rights Violations (Doc. #1-2) against 13 defendants. On July 1, 2026, defendants City of Gardner, Kansas, Casey Mast, James Anderson, Cody Waggoner and Pam Waldeck (collectively, "the Gardner defendants") removed the case to federal court. Notice Of Removal (Doc. #1). This matter is before the Court on Gardner Defendants' Motion To Dismiss (Doc. #7) filed July 8, 2026. For reasons stated below, the Court sustains the motion.

**Legal Standards**

Defendants seek to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008). In cases under 42 U.S.C. § 1983 "it is particularly important" that the complaint make clear "exactly *who* is alleged to have done *what* to *whom*." Id. at 1249–50 (emphasis in original).

Because plaintiff is proceeding pro se, the Court construes his filings liberally and holds him to a less stringent standard than trained lawyers. See Haines v. Kerner, 404 U.S. 519, 520–21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, "pro se litigants are subject to the same rules of procedure that govern other litigants." DiCesare v. Stuart, 12 F.3d 973, 979 (10th Cir. 1993). It is not the "proper function of the district court to assume the role of

advocate for the pro se litigant." Hall, 935 F.2d at 1110. Plaintiff still bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." Id.

**Factual Background**

Plaintiff's pro se complaint alleges as follows:

In 2023, plaintiff resided in Gardner, Kansas and was proceeding pro se in multiple civil matters, including a property dispute involving Iliana Mielcarek and her son Alex Katafias. During the course of the litigation, Mielcarek asserted that she held power of attorney for Katafias. Neither Mielcarek nor Katafias were represented by counsel. On June 2, 2023, Mielcarek filed a protection-from-stalking action against plaintiff and obtained a temporary protection order. As a pro se litigant, plaintiff was required to serve or provide litigation-related filings to Mielcarek, and a clerk for the criminal division of the Johnson County District Court instructed plaintiff to submit filed documents directly to Mielcarek despite the temporary protection-from-stalking order. Plaintiff sent court-related documents and legal communications to Mielcarek.

On July 17, 2023, the Johnson County District Court held a trial in plaintiff's case against Katafias for property damage. Mielcarek presented a power of attorney, and the court permitted her to assist Katafias during the proceeding. The court entered judgment for plaintiff. Immediately after the trial, that same day, Mielcarek and Katafias went to the Olathe Police Department ("OPD") and reported that plaintiff had violated the temporary protection-from-stalking order by emailing Mielcarek. Mielcarek acknowledged that the contacts from plaintiff consisted of emails concerning court matters, pending litigation, court reminders and active cases. Mielcarek and Katafias told the OPD about the property dispute with plaintiff and their efforts to recover property belonging to Katafias.

Officer Angela Winterscheidt of the OPD reviewed the emails on Mielcarek's cellular

telephone and acknowledged that the communications were court-related. When Winterscheidt learned that plaintiff was representing himself, she told Mielcarek and Katafias that plaintiff would argue that he had sent the emails in his role as a pro se litigant. Winterscheidt consulted with Sergeant Robert Ahsens, however, and they concluded that plaintiff had violated the protection order by sending emails to Mielcarek. Winterscheidt told Mielcarek and Katafias that she would contact the Gardner Police Department ("GPD") for assistance in arresting plaintiff for violating the protection order.

Later that same day, GPD Sergeant Cody Waggoner directed Officer Casey Mast to assist OPD in locating and arresting plaintiff. At about 6:04 p.m., officers Mast and James Anderson arrested plaintiff at his residence. Plaintiff explained that he had been in court earlier that day in a case involving Mielcarek and Katafias, that he had obtained a judgment against Katafias and that the emails to Mielcarek were case-related. Anderson explained that they were acting at the request of the OPD, and that Mast and Anderson did not know the details regarding the alleged violation. Plaintiff and his partner told Anderson that plaintiff had been in court earlier that day in a case related to property damage by Katafias, a former tenant, and the case involved the same people at issue in the protection-from-stalking matter. Plaintiff offered to show Anderson paperwork from the hearing and informed him that public court records would verify the court hearing. Anderson explained that when another agency requests that the GPD arrest someone, GPD does so. Anderson asked Mast whether OPD officers said they had probable cause for the arrest, and Mast responded in the affirmative. Anderson stated, "it's up to them then," and told plaintiff that a supervisor had instructed them to arrest him for the OPD.

Winterscheidt arrived and explained to Anderson that plaintiff was trying to represent himself in a civil case and was under the impression that he was permitted to send email concerning

case matters to the other party. Winterscheidt added that the protection order said no contact. Winterscheidt spoke to plaintiff while he was in Mast's police car. Plaintiff explained that he was engaged in litigation involving Mielcarek and was authorized to send her court-related communications. Winterscheidt told plaintiff that he should communicate through Mielcarek's attorney. Plaintiff explained that Mielcarek did not have an attorney. Winterscheidt replied, "not my problem." Plaintiff offered to produce court emails showing that he was required to send Mielcarek court-related documents and explained that Mielcarek and Katafias had filed their criminal complaint against him on the same day they lost the lawsuit with plaintiff. GPD transferred custody of plaintiff to Winterscheidt at about 6:36 p.m.

Winterscheidt proceeded with the arrest and transported plaintiff to the OPD. Before leaving, Winterscheidt asked which Gardner officer she should list on the report, and Anderson stated to only put Mast's name on the report, as he did not want to be part of the case. Mast's subsequent report stated that Corporal Cody Waggoner directed Mast to assist OPD in locating and arresting plaintiff for violating a protection order. Winterscheidt's report identified K.S.A. § 21-5427(a)(3), the stalking statute[1], as the basis for arrest, rather than the violation of an order of protection.

On July 18, 2023, the Johnson County District Attorney's Office charged plaintiff with violating a protection-from-stalking order, a Class A misdemeanor, in violation of K.S.A. § 21-

[1] K.S.A. § 21-5427(a)(3) states that "[s]talking is . . . after being served with, or otherwise provided notice of, any protective order included in [K.S.A. § 21-5924] . . . that prohibits contact with a targeted person, recklessly engaging in at least one act listed in subsection (f)(1) that violates the provisions of the order and would cause a reasonable person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear[.]" Subsection (f)(1) includes "any act of communication." K.S.A. § 21-5427(f)(1)(H).

5924.[2] The complaint listed Winterscheidt, Mielcarek and Katafias as witnesses. Officer David Smith of the OPD provided the affidavit in support of probable cause. Smith's affidavit relied on information from Winterscheidt's investigation and stated that Winterscheidt was dispatched after Mielcarek reported a no-contact violation. The affidavit further stated that Mielcarek reported that plaintiff contacted her by email regarding an upcoming court date while plaintiff was representing himself. The affidavit stated that the emails appeared professional in manner. Despite those facts, the affidavit treated the emails as criminal contact because the protection order prohibited email contact. The affidavit did not address the active civil litigation, Mielcarek's claimed role involving Katafias or the exemptions in K.S.A. § 60-31a06(g).[3] The affidavit further stated that Winterscheidt had contacted the GPD and requested assistance in locating and arresting plaintiff.

Plaintiff remained in custody for two days before being released on bond. The Johnson County District Court imposed a $3,500 cash-or-surety bond with conditions, including house arrest, electronic monitoring, no contact with victims or witnesses, a mental health evaluation and compliance with mental health recommendations. Plaintiff spent 11 days on house arrest and approximately three months on GPS monitoring until the judge modified his bond conditions.

---

[2] K.S.A. § 21-5924(a)(6) states that "[v]iolation of a protective order is knowingly violating . . . a protection from stalking, sexual assault or human trafficking order issued pursuant to K.S.A. 60-31a05 or 60-31a06." It further states that "[n]o protective order . . . shall be construed to prohibit an attorney, or any person acting on such attorney's behalf, who is representing the defendant in any civil or criminal proceeding, from contacting the protected party for a legitimate purpose within the scope of the civil or criminal proceeding." K.S.A. § 21-5924(c).

[3] K.S.A. § 60-31a06(g) states as follows:

> A no contact or restraining provision in a protective order issued pursuant to this section shall not be construed to prevent: (1) Contact between the attorneys representing the parties; . . . or (3) a defendant or defendant's attorney from sending the plaintiff copies of any legal pleadings filed in court relating to civil or criminal matters presently relevant to the plaintiff.

After modification, plaintiff remained on pretrial services supervision while the criminal case remained pending.

On August 14, 2023, at the final hearing on Mielcarek's request for a final order of protection from stalking, she testified that she did not fear for her safety due to plaintiff's actions. Mielcarek confirmed that she held power of attorney for Katafias and had made that known during prior proceedings. The Johnson County court (1) denied the final protection-from-stalking order, (2) found insufficient evidence of stalking and (3) vacated any ex parte or temporary orders previously issued in the case.

On September 27, 2023, plaintiff moved to dismiss the criminal case against him. The next day, the District Attorney's Office asked the OPD to contact Mielcarek to get the emails which formed the basis for plaintiff's alleged violation of the protection order.[4] On November 15, 2023, Assistant District Attorney Abby Olson emailed OPD Captain Carl Anderson and Chief Mike Butaud stating: "I requested the additional follow up of the content of the emails and still have not received them. I need those in order to appropriately respond to the motion." Later that morning, Anderson informed Olson that a new file package containing all requested information had been completed and sent to the District Attorney's Office. Also on November 15, 2023, while Butaud reviewed the newly received email contents, he directed Olson to a specific message he described as containing a personal statement from plaintiff to Mielcarek.

On February 19, 2024, plaintiff's counsel argued that plaintiff and Mielcarek were pro se litigants in several Johnson County civil cases, that plaintiff sent Mielcarek emails regarding that civil litigation and that each email concerned subject matter within the scope of those proceedings.

[4] Winterscheidt's report dated July 17, 2023 contained photographs which showed Mielcarek's email inbox and subject lines but did not show the content of any email.

On May 21, 2024, plaintiff's counsel filed a motion to suppress plaintiff's warrantless arrest. The motion alleged that (1) Winterscheidt's report acknowledged that the emails concerned subpoenas, notices of hearing, and document requests; (2) the emails appeared professional in manner; (3) Winterscheidt took photographs of only limited information provided by Mielcarek; and (4) GPD officers had no evidence of the emails when they detained plaintiff.

On August 23, 2024, Johnson County District Judge Thomas M. Sutherland heard argument on the legality of plaintiff's arrest. He stated that plaintiff's counsel was likely correct that the arrest did not technically comply with K.S.A. § 22-2401 and that the State's contrary argument under § 22-2401(d) was incorrect.[5] On November 27, 2024, Judge Sutherland again addressed the arrest issue. Judge Sutherland stated that he had reviewed the matter "every which way but loose" and tended to agree with the defense that the arrest was not legal.

On June 11, 2025, the State moved to dismiss the criminal case against plaintiff, and on June 12, 2025, the court dismissed it without prejudice. A month later, the court entered an order of expungement concerning plaintiff's arrest and prosecution.

On May 26, 2026, plaintiff filed his petition for damages in this case. Under 42 U.S.C. § 1983, plaintiff alleges (1) unlawful seizure and arrest in violation of the Fourth Amendment of the U.S. Constitution by Mast, Anderson and Waggoner (Count I); (2) malicious prosecution in violation of the Fourth Amendment by the individual defendants and the City of Gardner (Count II); (3) retaliatory arrest and enforcement in violation of the First Amendment by all individual defendants (Count III); and (4) failure to intervene in preventing constitutional violations by Mast

---

[5] Section 22-2401 provides the circumstances under which a law enforcement officer may arrest a person. Under § 22-2401(d), a law enforcement officer may arrest a person for "[a]ny crime, except a traffic infraction or cigarette or tobacco infraction, [which] has been or is being committed by the person in the officer's view."

and Anderson (Count IV). Against the City of Gardner, plaintiff alleges municipal liability under Monell v. Dep't of Soc. Servs. of City of New York, 436 U.S. 658 (1978) (Count VI). Plaintiff brings three additional counts under Kansas state law: (1) false arrest and false imprisonment against Mast, Anderson and the City of Gardner (Count VII); (2) malicious prosecution against the individual defendants (Count VIII); and (3) negligence or gross negligence against Mast, Anderson, Waldeck and the City of Gardner under the Kansas Tort Claims Act ("KTCA"), K.S.A. § 75-6103 (Count IX).

Plaintiff seeks compensatory damages against all of the Gardner defendants and punitive damages against Mast, Anderson and Waldeck.

## Analysis

The individual defendants argue that the statute of limitations bars plaintiff's claims under Section 1983 for unlawful arrest and unreasonable seizure (Count I), First Amendment retaliation (Count III) and failure to intervene (Count IV). They further argue that plaintiff fails to state a claim for malicious prosecution under Section 1983 (Count II) and that they are entitled to qualified immunity. The City argues that plaintiff fails to state a claim under Monell (Counts II and VI). Defendants also argue that the statute of limitations and exceptions to liability under the Kansas Tort Claims Act, K.S.A. § 75-6103, bar plaintiff's claims.

### I. Statute of Limitations—Counts I, III And IV

The individual defendants argue that the two-year statute of limitations bars Counts I, III and IV under Section 1983 for violations of the First and Fourth Amendments and failure to intervene to prevent constitutional violations. Section 1983 provides a federal civil cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. For purposes of Section 1983, the Court borrows the statute of

limitations from the personal injury laws of the state in which the claim arose. Wallace v. Kato, 549 U.S. 384, 387 (2007); McCarty v. Gilchrist, 646 F.3d 1281, 1289 (10th Cir. 2011). Accordingly, for Section 1983 claims arising in Kansas, the Court applies a two-year statute of limitations. See K.S.A. § 60–513(a)(4). Federal law determines the date on which the claim accrues and, therefore, when the limitations period starts to run. Wallace, 549 U.S. at 388.

Count I claims that Mast, Anderson and Waggoner violated plaintiff's Fourth Amendment rights when they arrested him at the request of the OPD on July 17, 2023, without a warrant or probable cause.[6] Plaintiff's claim under the Fourth Amendment for unlawful arrest without legal process is analogous to a tort claim for false arrest or false imprisonment. Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008); see also Myers v. Koopman, 738 F.3d 1190, 1194 (10th Cir. 2013) (courts look to common-law torts as analogies to determine accrual date of Section 1983 claims).[7] A Fourth Amendment claim for false arrest begins to accrue when the alleged false arrest ends, which for statute of limitations purposes, is when the individual is released or when the detention becomes pursuant to legal process. Mondragon, 519 F.3d at 1082–83. After legal process begins, any remaining constitutional claim is analogous to a malicious prosecution claim. Id. at 1083.

---

[6] Several allegations in Count I describe conduct by "defendants," without specifying which defendants engaged in the conduct. As noted above, in Section 1983 cases "it is particularly important" that the complaint make clear "exactly who is alleged to have done what to whom." Robbins, 519 F.3d at 1249–50. The Court will disregard allegations which attribute conduct to unspecified "defendants."

[7] The terms "false arrest" and "false imprisonment" are both used in Kansas courts to mean "any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere." Brown v. State, 261 Kan. 6, 9, 927 P.2d 938, 940 (1996). Plaintiff alleges that Mast, Anderson and Waggoner arrested him at the OPD's request and turned him over to the OPD outside plaintiff's residence, so "false arrest" is the more apt analogy in this context.

At the latest, plaintiff's Fourth Amendment claim accrued on July 19, 2023, when the Johnson County court released him on bond. Plaintiff filed the instant lawsuit on May 26, 2026—almost three years after his Fourth Amendment false arrest claim accrued. Therefore, the statute of limitations bars his Fourth Amendment claim for unlawful arrest under Section 1983 against Mast, Anderson and Waggoner. The Court dismisses Count I.[8]

Count III alleges a First Amendment claim for retaliatory arrest and enforcement by Mast, Anderson, Waldeck and Waggoner. Plaintiff alleges that Mast, Anderson, Waldeck and Waggoner retaliated against him in violation of the First Amendment by arresting him for litigation-related communications without independently verifying the underlying facts. That claim accrued when "plaintiff ha[d] a complete and present cause of action," and could therefore "file suit and obtain relief." Herrera v. City of Espanola, 32 F.4th 980, 990 (10th Cir. 2022). Because all of the alleged conduct by Mast, Anderson, Waldeck and Waggoner took place on July 17, 2023, the two-year statute of limitations also bars plaintiff's First Amendment retaliation claim. The Court dismisses Count III.

Count IV alleges that Mast and Anderson had a realistic opportunity to intervene and prevent the constitutional violations on July 17, 2023 by declining to complete the arrest, delaying plaintiff's seizure to demand more facts from the OPD, reviewing court-related documents, contacting a supervisor or refusing to continue plaintiff's detention until the OPD provided a lawful basis.[9] Mast and Anderson argue that plaintiff's failure to intervene claim is also subject to

---

[8] Defendants do not argue that Count II, for malicious prosecution under § 1983, is time-barred. The applicable statute of limitations is also two years, but a claim of malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor. See Heck v. Humphrey, 512 U.S. 477, 489 (1994); Myers, 738 F.3d at 1194.

[9] Plaintiff notes that discovery might reveal other individual defendants who are

(continued. . .)

a two-year statute of limitations. Plaintiff acknowledges that Mast and Anderson's involvement in the matter ended on July 17, 2023, when they turned over custody of plaintiff to the OPD. Because all of the facts that form the basis of this claim accrued more than two years before plaintiff filed his lawsuit, it is also time-barred. The Court dismisses Count IV.

## II. Qualified Immunity—Count II

Mast, Anderson, Waldeck and Waggoner argue that they are entitled to qualified immunity as to plaintiff's Fourth Amendment malicious prosecution claim under Section 1983 (Count II). Plaintiff responds that by July of 2023 it was clearly established that a warrantless arrest required probable cause based on reasonably trustworthy information, and therefore the individual defendants are not entitled to qualified immunity.

Government officials sued in their individual capacities are entitled to qualified immunity from suit and liability for civil damages for performing discretionary functions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Wilson v. Stoltenberg, 182 F.4th 903, 910 (10th Cir. 2026). In resolving a motion to dismiss based on qualified immunity, the Court must consider whether the facts that plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendants' alleged misconduct. Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011). The Court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. Pearson, 555 U.S. at

---

[9](. . . continued)
likewise liable for failure to intervene. This allegation is patently insufficient to provide a defendant with fair notice as to the claim against him. Robbins, 519 F.3d at 1249–50.

236.

Whether a right is "clearly established" is an objective test: the relevant, dispositive inquiry is "whether it would be clear to a reasonable [individual] that his conduct was unlawful in the situation he confronted." Brown, 662 F.3d at 1164 (quoting Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010)). For the law to be clearly established, ordinarily "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id.

Plaintiff has the burden of showing both that defendant violated a constitutional right and that the right was clearly established at the time of the alleged violation. Wilson, 182 F.4th at 910–11. He "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it;" he "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Green v. Post, 574 F.3d 1294, 1300 (10th Cir. 2009) (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 517 (10th Cir. 1998)).

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. Pearson, 555 U.S. at 232. Because qualified immunity is "an immunity from suit rather than a mere defense to liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The driving force behind the qualified immunity doctrine is a desire to ensure that "insubstantial claims against government officials will be resolved prior to discovery." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). Accordingly, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991)

(per curiam)).

In support of his Section 1983 malicious prosecution claim, plaintiff alleges that Mast and Anderson seized him at his residence and detained him at another agency's request without independently verifying the evidence against him. As to Waggoner and Waldeck, he argues that they supervised and ratified the decision to arrest plaintiff and the officers' conduct in carrying out the arrest. To prove malicious prosecution under Section 1983, plaintiff must prove that (1) defendant caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of plaintiff; (3) no probable cause supported the arrest, confinement or prosecution; (4) defendant acted maliciously; and (5) plaintiff suffered damages. Shrum v. Cooke, 60 F.4th 1304, 1310 (10th Cir. 2023).

Plaintiff does not allege facts showing that any of the individual Gardner defendants caused his continued confinement or prosecution. Malicious prosecution concerns detention only "[a]fter the institution of legal process." Mondragon, 519 F.3d at 1083; see also Wallace, 549 U.S. at 390 (damages recoverable for malicious prosecution based on wrongful use of judicial process). As plaintiff alleges, on July 17, 2023, Mast and Anderson arrested him without a warrant at the request of the OPD. Less than one hour later, they turned him over to the OPD. On July 18, 2023, the Johnson County District Attorney's Office filed a criminal complaint charging plaintiff with violating a protection-from-stalking order, a Class A misdemeanor, in violation of K.S.A. § 21-5924. Plaintiff offers no allegations indicating what role, if any, Mast, Anderson, Waggoner or Waldeck played in his prosecution. The allegations in the complaint indicate that only Mast and Anderson assisted the OPD in the initial arrest, and that Waggoner and Waldeck supervised and ratified their participation in the arrest.

The complaint does not connect Mast, Anderson, Waggoner or Waldeck to the prosecution.

Therefore, plaintiff fails to allege that any of the individual defendants caused his continued confinement or prosecution. See Shrum, 60 F.4th at 1312 (chain of causation broken by indictment absent allegation of pressure or influence exerted by police, or knowing misstatements made to prosecutor); Schneider v. City of Grand Junction Police Dept., 717 F.3d 760, 768 (10th Cir. 2013) (plaintiff must show that defendant's alleged actions caused constitutional violation by setting in motion events defendant knew or reasonably should have known would cause others to deprive plaintiff of his constitutional rights). See also Iqbal, 556 U.S. at 678 (mere possibility of misconduct insufficient; pleadings must show that plaintiff is entitled to relief). Plaintiff fails to state a claim for relief under Section 1983 for malicious prosecution. For this reason, the Court concludes that Mast, Anderson, Waggoner and Waldeck are entitled to qualified immunity on plaintiff's Fourth Amendment malicious prosecution claim under Section 1983. The Court therefore dismisses Count II as to Mast, Anderson, Waggoner and Waldeck. This ruling does not address plaintiff's claim against the City of Gardner in Count II.

## III. Municipal Liability—Counts II And VI

Counts II and VI allege that when officers arrested plaintiff at the request of the OPD without independently evaluating probable cause, the City of Gardner violated his constitutional rights through its policies, customs, practices, final-policymaker decisions, failure to train, failure to supervise, failure to discipline and ratification. The City of Gardner argues that plaintiff fails to state a claim for liability against the City under Monell.

A municipality can be directly sued under Section 1983 when its officers commit constitutional violations in accordance with its official policy or custom. Monell, 436 U.S. at 690–91. To state a claim for Monell liability against a municipality, plaintiff must allege that (1) an official policy or custom (2) caused his constitutional injury and (3) the policy or custom was

"enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." See Schneider, 717 F.3d at 769. Liability for municipal policy or custom may be imposed only when the enforcement of the municipal policy or custom was "the moving force" behind the violation of a federally protected right. Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 400 (1997).

As to Count II, plaintiff's Monell claim against the City fails for the same reason that his Section 1983 claim of malicious prosecution fails against the individual defendants—plaintiff does not allege that any of the individual Gardner defendants caused his continued confinement or prosecution. See Monell, 436 U.S. at 694 (to plead municipal liability, plaintiff must allege constitutional violation by municipal employee). Plaintiff also fails to allege that an official policy or custom of the City *caused* plaintiff's constitutional injury or was "the moving force" behind the violation. Schneider, 717 F.3d at 769; Brown, 520 U.S. at 400. The Court dismisses Count II against the City of Gardner.

Count VI alleges a Monell claim against the City of Gardner based on a violation of his Constitutional rights under the First, Fourth and Fourteenth Amendments. Plaintiff relies on the same violations he asserts in Counts I through IV for unlawful arrest, unreasonable seizure, retaliatory enforcement, malicious prosecution and failure to intervene.[10] Plaintiff's Monell claim against the City is time-barred. See Cowdrey v. City of Eastborough, Kan., 730 F.2d 1376, 1378 n.3 (10th Cir. 1984) (Monell claim subject to two-year limitations period); Herrera, 32 F.4th at 1000 (in context of municipal liability, plaintiff has no cause of action for injury that occurred outside limitations period). For this reason, the Court dismisses Count VI against the City of

[10] To the extent plaintiff's Monell claim in Count VI is predicated on malicious prosecution and therefore duplicative of his Monell claim in Count II, the Court dismisses Count VI for the same reasons it dismisses the claim against the City in Count II.

Gardner.[11]

## IV. False Arrest And False Imprisonment Under Kansas Law—Count VII

Count VII alleges that Mast and Anderson violated Kansas law by intentionally and without legal justification causing plaintiff to be restrained, seized, handcuffed, held at his residence, transferred into Olathe custody, transported, booked, jailed and confined. It further alleges that the City of Gardner is liable for the wrongful acts of its employees. Mast, Anderson and the City argue that plaintiff's claims for false arrest and false imprisonment are time-barred under Kansas law and subject to dismissal under the Kansas Tort Claims Act, K.S.A. § 75-6104(a)(3).

Under Kansas law, the statute of limitations for false arrest and false imprisonment is one year. K.S.A. § 60-514(b). As noted above, under Kansas law, the terms "false arrest" and "false imprisonment" are both used to mean "any unlawful physical restraint by one of another's liberty, whether in prison or elsewhere." Gariety v. Fleming, 121 Kan. 42, 45, 245 P. 1054, 1055 (1926). A cause of action accrues as soon as the right to maintain a legal action arises. Lindenman v. Umscheid, 255 Kan. 610, 620, 875 P.2d 964, 972 (1994). The right to sue for false arrest and false imprisonment begins when the detention ends. Arceo v. City of Junction City, Kansas, 182 F. Supp. 2d 1062, 1087 (D. Kan. 2002). At the latest, plaintiff's claims for false arrest and false imprisonment began to accrue on July 19, 2023, when plaintiff was released on bond. Therefore, the statute of limitations for his state claims of false arrest and false imprisonment expired on July 19, 2024. Because plaintiff did not file his claims until May 26, 2026, his claims are time-barred.

---

[11] This ruling does not apply to plaintiff's Monell claim based on malicious prosecution under § 1983. Defendants do not argue that plaintiff's malicious prosecution claim under § 1983 is time-barred. As noted earlier, unlike a claim for false arrest which accrues when the individual is released, a claim of malicious prosecution does not accrue until the criminal proceedings have terminated in the plaintiff's favor. See Heck v. Humphrey, 512 U.S. 477, 489 (1994); Myers, 738 F.3d at 1194.

The Court therefore dismisses Count VII against Mast, Anderson and the City of Gardner.[12]

## V. Malicious Prosecution Under Kansas Law—Count VIII

Count VIII alleges that Mast, Anderson, Waggoner, Waldeck and the City of Gardner are liable for malicious prosecution. The Gardner defendants argue that plaintiff fails to state a claim upon which relief can be granted.

To state a claim for malicious prosecution under Kansas law, plaintiff must prove that (1) defendant initiated, continued or procured the criminal proceeding against the plaintiff; (2) in so doing, defendant acted without probable cause; (3) defendant acted with malice; (4) the proceeding terminated in favor of plaintiff; and (5) plaintiff sustained damages. Lindenman, 255 Kan. at 620, 875 P.2d at 974. A defendant typically institutes or procures a criminal proceeding within the meaning of the first element by signing a criminal complaint against plaintiff. Crow v. United States, 659 F. Supp. 556, 571 (D. Kan. 1987). Otherwise, defendant must be active in continuing the prosecution, such as by urging further prosecution. Allin v. Schuchmann, 886 F. Supp. 793, 798 (D. Kan. 1995). Here, the complaint does not allege that the Gardner defendants obtained the criminal complaint against plaintiff or were active in prosecuting it. Plaintiff acknowledges that the GPD's role was limited to arresting him at the OPD's request and that he was in the GPD's custody for less than an hour before the GPD transferred custody to the OPD.

In addition, the complaint does not allege facts supporting plaintiff's bald assertions that the Gardner defendants acted with malice. Plaintiff alleges no facts to support the claim that any

[12] Defendants also argue that plaintiff's claims for false arrest and false imprisonment fail under Kansas law because exceptions from liability under the Kansas Tort Claims Act, K.S.A. § 75-6104(a)(3), bar such claims. Section 75-6104(a)(3) states that "[a] governmental entity or an employee acting within the scope of the employee's employment shall not be liable for damages resulting from . . . enforcement of or failure to enforce a law, whether valid or invalid[.]" Because the Court dismisses the claims as time-barred, the Court need not reach this issue.

of the Gardner defendants acted with "evil mindedness or specific intent to injure," as Kansas law requires to sustain a claim for malicious prosecution. See Burney v. Kansas Dep't of Soc. & Rehab. Servs., 23 Kan. App. 2d 394, 404, 931 P.2d 26, 33 (Kan. Ct. App. 1997). Plaintiff acknowledges that the Gardner defendants had no information or details about the case when they arrested him and simply relied on representations by the OPD that it had probable cause to arrest plaintiff for violating an order of protection. Given these circumstances, the complaint fails to state a claim for malicious prosecution against the Gardner defendants.

The Court therefore dismisses Count VIII.

## VI. Kansas Negligence Claim—Count IX

Count IX alleges that Mast, Anderson, Waldeck and the City of Gardner were negligent in failing to exercise reasonable care in determining whether probable cause existed before arresting him. Defendants respond that the two-year statute of limitations under Kansas law and the KTCA, K.S.A. § 75-6104(a)(3), bar plaintiff's tort claims.

Under Kansas law, negligence has a two-year statute of limitations. K.S.A. § 60-513(a)(4). The limitations period for plaintiff's negligence claim began to accrue when plaintiff could have first filed his claim. Lindenman, 255 Kan. at 620, 875 P.2d at 974. Plaintiff claims that Mast, Anderson, Waldeck and the City owed him a duty of care in deciding whether they had probable cause to arrest him. His arrest took place on July 17, 2023, so the statute of limitations for plaintiff's negligence claim expired on July 17, 2025.[13] Plaintiff filed his lawsuit on May 26, 2026, and his negligence claims are untimely.

---

[13] Given the allegation that the GPD turned over custody of plaintiff to the OPD on July 17, 2023 and had no further involvement in his prosecution, plaintiff has no basis to claim that any of the Gardner defendants owed him a continuing duty of care. Because the Court dismisses plaintiff's negligence claims as time-barred, the Court need not consider defendant's argument that the KTCA, K.S.A. § 75-6104(a)(3), bars plaintiff's tort claims.

The Court dismisses Count IX against Mast, Anderson, Waldeck and the City of Gardner.

**VII. Leave To Amend The Complaint**

In opposing defendants' motion to dismiss, plaintiff requests limited leave to amend the complaint under Rule 15(a)(2), Fed. R. Civ. P. Plaintiff argues that amendment would allow him to "state additional dates, identify the records transmitted among agencies, clarify the capacity in which each supervisor acted, and narrow any claim the Court concludes is not legally maintainable." Plaintiff's Response In Opposition To Gardner Defendants' Motion To Dismiss And Memorandum In Support (Doc. #14) filed July 28, 2026. Defendants note that because plaintiff's request for leave to amend is based on generalized assertions, they cannot adequately oppose it. Defendants nonetheless argue that the Court should deny plaintiff's request to amend as futile.

The Court overrules plaintiff's request to amend the complaint because the issue is not properly before the Court. A motion for leave to amend must be filed in a separate document and plaintiff must attach as an exhibit a copy of the proposed amended complaint. See Local Rules 7.1(a), 15.1(a)(2). Plaintiff made his request to amend in the second-to-last paragraph of his response to defendants' motion to dismiss and did not attach a proposed amended complaint. See Response (Doc. #14) at 11. Furthermore, plaintiff has had ample time and opportunity to amend his complaint and has declined to do so. See Fed. R. Civ. P. 15(a)(1)(B) (plaintiff may file amended complaint as of right within 21 days after defendants filed motion to dismiss). Plaintiff does not identify the subject matter of any proposed amendment, and open-ended leave to amend to add unspecified allegations would defeat the objectives of Rule 1, Fed. R. Civ. P., by unnecessarily prolonging this litigation and increasing its cost with no incremental progress toward the just determination of this action.

**IT IS THEREFORE ORDERED** that Gardner Defendants' Motion To Dismiss (Doc. #7) filed July 8, 2026 is **SUSTAINED**. Counts I through IV and Counts VI through IX of plaintiff's complaint, against the City of Gardner, Casey Mast, James Anderson, Cody Waggoner and Pam Waldeck, are dismissed. No claims against the Gardner defendants remain in the case.

Counts I through V and VII through IX advance claims against the Olathe defendants, which this order does not address. Counts VII through IX also advance claims against Mielcarek and Katafias, which this order does not address.

Dated this 28th day of October, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge