**IN THE UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF KANSAS**

| | | |
|---|---|---|
| **LONNIE LUPARDUS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | **CIVIL ACTION** |
| | ) | |
| **v.** | ) | **No. 26-2386-KHV** |
| | ) | |
| **ILIANA MIELCAREK, et al.** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |
| | ) | |

## MEMORANDUM AND ORDER

On May 26, 2026, in the District Court of Johnson County, Kansas, Lonnie Lupardus filed a pro se Petition For Damages And Civil Rights Violations (Doc. #1-2) against 13 defendants. On July 1, 2026, defendants City of Gardner, Kansas, Casey Mast, James Anderson, Cody Waggoner and Pam Waldeck (collectively, "the Gardner defendants") removed the case to federal court. Notice Of Removal (Doc. #1).[1] This matter is before the Court on City of Olathe Defendants' Motion To Dismiss And Memorandum In Support (Doc. #9) filed July 8, 2026. For reasons stated below, the Court sustains the motion.

## Legal Standards

Defendants seek to dismiss plaintiff's complaint under Rule 12(b)(6) of the Federal Rules of Civil Procedure. In ruling on a motion to dismiss for failure to state a claim under Rule 12(b)(6), the Court assumes as true all well-pleaded factual allegations and determines whether they plausibly give rise to an entitlement to relief. Ashcroft v. Iqbal, 556 U.S. 662, 679 (2009). To survive a motion to dismiss, a complaint must contain sufficient factual matter to state a claim

[1] Two defendants, Iliana Mielcarek and Alex Katafias, have not entered appearances.

which is plausible—and not merely conceivable—on its face. Id. at 679–80; Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007). In determining whether a complaint states a plausible claim for relief, the Court draws on its judicial experience and common sense. Iqbal, 556 U.S. at 679.

The Court need not accept as true those allegations which state only legal conclusions. See id.; United States v. Herring, 935 F.3d 1102, 1110 (10th Cir. 2019). Plaintiff bears the burden of framing his claims with enough factual matter to suggest that he is entitled to relief; it is not enough to make threadbare recitals of a cause of action accompanied by conclusory statements. See Twombly, 550 U.S. at 556. Plaintiff makes a facially plausible claim by pleading factual content from which the Court can reasonably infer that defendants are liable for the alleged misconduct. Iqbal, 556 U.S. at 678. Plaintiff must show more than a sheer possibility that defendants have acted unlawfully—it is not enough to plead facts that are "merely consistent" with defendants' liability. Id. (quoting Twombly, 550 U.S. at 557). A pleading which offers labels and conclusions, a formulaic recitation of the elements of a cause of action or naked assertions devoid of further factual enhancement will not stand. Id. Similarly, where the well-pleaded facts do not permit the Court to infer more than mere possibility of misconduct, the pleading has alleged—but has not "shown"—that the pleader is entitled to relief. Id. at 679. The degree of specificity necessary to establish plausibility and fair notice depends on context, because what constitutes fair notice under Rule 8(a)(2), Fed. R. Civ. P., depends on the type of case. Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008). In cases under 42 U.S.C. § 1983 "it is particularly important" that the complaint make clear "exactly *who* is alleged to have done *what* to *whom*." Id. at 1249–50 (emphasis in original).

Because plaintiff is proceeding pro se, the Court construes his filings liberally and holds him to a less stringent standard than trained lawyers. See Haines v. Kerner, 404 U.S. 519, 520–

21 (1972); Hall v. Bellmon, 935 F.2d 1106, 1110 (10th Cir. 1991). Nevertheless, "pro se litigants are subject to the same rules of procedure that govern other litigants." DiCesare v. Stuart, 12 F.3d 973, 979 (10th Cir. 1993). It is not the "proper function of the district court to assume the role of advocate for the pro se litigant." Hall, 935 F.2d at 1110. Plaintiff still bears "the burden of alleging sufficient facts on which a recognized legal claim could be based." Id.

## **Factual Background**

Plaintiff's pro se complaint alleges as follows:

In 2023, plaintiff resided in Gardner, Kansas and was proceeding pro se in multiple civil matters, including a property dispute involving Iliana Mielcarek and her son Alex Katafias. During the course of the litigation, Mielcarek asserted that she held power of attorney for Katafias. Neither Mielcarek nor Katafias were represented by counsel. On June 2, 2023, Mielcarek filed a protection-from-stalking action against plaintiff and obtained a temporary protection order. As a pro se litigant, plaintiff was required to serve or provide litigation-related filings to Mielcarek, and a clerk for the criminal division of the Johnson County District Court instructed plaintiff to submit filed documents directly to Mielcarek despite the temporary protection-from-stalking order. Plaintiff sent court-related documents and legal communications to Mielcarek.

On July 17, 2023, the Johnson County District Court held a trial in plaintiff's case against Katafias for property damage. Mielcarek presented a power of attorney, and the court permitted her to assist Katafias during the proceeding. The court entered judgment for plaintiff. Immediately after the trial, that same day, Mielcarek and Katafias went to the Olathe Police Department ("OPD") and reported that plaintiff had violated the temporary protection-from-stalking order by emailing Mielcarek. Mielcarek acknowledged that the contacts from plaintiff consisted of emails concerning court matters, pending litigation, court reminders and active cases. Mielcarek and

Katafias told the OPD about the property dispute with plaintiff and their efforts to recover property belonging to Katafias.

Officer Angela Winterscheidt of the OPD reviewed the emails on Mielcarek's cellular telephone and acknowledged that the communications were court related. When Winterscheidt learned that plaintiff was representing himself, she told Mielcarek and Katafias that plaintiff would argue that he had sent the emails in his role as a pro se litigant. Winterscheidt consulted with Sergeant Robert Ahsens, however, and they concluded that plaintiff had violated the protection order by sending emails to Mielcarek. Winterscheidt told Mielcarek and Katafias that she would contact the Gardner Police Department ("GPD") for assistance in arresting plaintiff for violating the protection order.

Later that same day, GPD Sergeant Cody Waggoner directed Officer Casey Mast to assist OPD in locating and arresting plaintiff. At about 6:04 p.m., officers Mast and James Anderson arrested plaintiff at his residence. Plaintiff explained that he had been in court earlier that day in a case involving Mielcarek and Katafias, that he had obtained a judgment against Katafias and that the emails to Mielcarek were case related. Anderson explained that they were acting at the request of the OPD, and that Mast and Anderson did not know the details regarding the alleged violation. Plaintiff and his partner told Anderson that plaintiff had been in court earlier that day in a case related to property damage by Katafias, a former tenant, and the case involved the same people at issue in the protection-from-stalking matter. Plaintiff offered to show Anderson paperwork from the hearing and informed him that public court records would verify the court hearing. Anderson explained that when another agency requests that the GPD arrest someone, GPD does so. Anderson asked Mast whether OPD officers said they had probable cause for the arrest, and Mast responded in the affirmative. Anderson stated, "it's up to them then," and told plaintiff that a

supervisor had instructed them to arrest him for the OPD.

Winterscheidt arrived and explained to Anderson that plaintiff was trying to represent himself in a civil case and was under the impression that he was permitted to send email concerning case matters to the other party. Winterscheidt added that the protection order said no contact. Winterscheidt spoke to plaintiff while he was in Mast's police car. Plaintiff explained that he was engaged in litigation involving Mielcarek and was authorized to send her court-related communications. Winterscheidt told plaintiff that he should communicate through Mielcarek's attorney. Plaintiff explained that Mielcarek did not have an attorney. Winterscheidt replied, "not my problem." Plaintiff offered to produce court emails showing that he was required to send Mielcarek court-related documents and explained that Mielcarek and Katafias had filed their criminal complaint against him on the same day they lost the lawsuit with plaintiff.

Winterscheidt proceeded with the arrest and transported plaintiff to the OPD. Winterscheidt's report identified K.S.A. § 21-5427(a)(3), the stalking statute[2], as the basis for arrest, rather than the violation of an order of protection.

On July 18, 2023, the Johnson County District Attorney's Office charged plaintiff with violating a protection-from-stalking order, a Class A misdemeanor, in violation of K.S.A. § 21-5924.[3] The complaint listed Winterscheidt, Mielcarek and Katafias as witnesses. Officer David

---

[2] K.S.A. § 21-5427(a)(3) states that "[s]talking is . . . after being served with, or otherwise provided notice of, any protective order included in [K.S.A. § 21-5924] . . . that prohibits contact with a targeted person, recklessly engaging in at least one act listed in subsection (f)(1) that violates the provisions of the order and would cause a reasonable person to fear for such person's safety, or the safety of a member of such person's immediate family and the targeted person is actually placed in such fear[.]" Subsection (f)(1) includes "any act of communication." K.S.A. § 21-5427(f)(1)(H).

[3] K.S.A. § 21-5924(a)(6) states that "[v]iolation of a protective order is knowingly violating . . . a protection from stalking, sexual assault or human trafficking order issued pursuant to K.S.A. 60-31a05 or 60-31a06." It further states that "[n]o protective order . . . shall be construed

(continued . . .)

Smith of the OPD provided the affidavit in support of probable cause. Smith's affidavit relied on information from Winterscheidt's investigation and stated that Winterscheidt was dispatched after Mielcarek reported a no-contact violation. The affidavit further stated that Mielcarek reported that plaintiff contacted her by email regarding an upcoming court date while plaintiff was representing himself. The affidavit stated that the emails appeared professional in manner. Despite those facts, the affidavit treated the emails as criminal contact because the protection order prohibited email contact. The affidavit did not address the active civil litigation, Mielcarek's claimed role involving Katafias or the exemptions in K.S.A. § 60-31a06(g).[4]

Plaintiff remained in custody for two days before being released on bond. The Johnson County District Court imposed a $3,500 cash-or-surety bond with conditions, including house arrest, electronic monitoring, no contact with victims or witnesses, a mental health evaluation and compliance with mental health recommendations. Plaintiff spent 11 days on house arrest and approximately three months on GPS monitoring until the judge modified his bond conditions. After modification, plaintiff remained on pretrial services supervision while the criminal case remained pending.

On August 14, 2023, at the final hearing on Mielcarek's request for a final order of

---

[3](…continued)
to prohibit an attorney, or any person acting on such attorney's behalf, who is representing the defendant in any civil or criminal proceeding, from contacting the protected party for a legitimate purpose within the scope of the civil or criminal proceeding." K.S.A. § 21-5924(c).

[4] K.S.A. § 60-31a06(g) states as follows:

> A no contact or restraining provision in a protective order issued pursuant to this section shall not be construed to prevent: (1) Contact between the attorneys representing the parties; . . . or (3) a defendant or defendant's attorney from sending the plaintiff copies of any legal pleadings filed in court relating to civil or criminal matters presently relevant to the plaintiff.

protection from stalking, she testified that she did not fear for her safety due to plaintiff's actions. Mielcarek confirmed that she held power of attorney for Katafias and had made that known during prior proceedings. The Johnson County court (1) denied the final protection-from-stalking order, (2) found insufficient evidence of stalking and (3) vacated any ex parte or temporary orders previously issued in the case.

On September 27, 2023, plaintiff moved to dismiss the criminal case against him. The next day, the District Attorney's Office asked the OPD to contact Mielcarek to get the emails which formed the basis for plaintiff's alleged violation of the protection order.[5] On November 15, 2023, Assistant District Attorney Abby Olson emailed OPD Captain Carl Anderson and Chief Mike Butaud stating: "I requested the additional follow up of the content of the emails and still have not received them. I need those in order to appropriately respond to the motion." Later that morning, Anderson informed Olson that a new file package containing all requested information had been completed and sent to the District Attorney's Office. Also on November 15, 2023, while Butaud reviewed the newly received email contents, he directed Olson to a specific message he described as containing a personal statement from plaintiff to Mielcarek. Later that same day Olson responded that she reviewed the emails and identified three emails she considered "a clear violation" of the protective order.

On February 19, 2024, plaintiff's counsel argued that plaintiff and Mielcarek were pro se litigants in several Johnson County civil cases, that plaintiff sent Mielcarek emails regarding that civil litigation and that each email concerned subject matter within the scope of those proceedings. On May 21, 2024, plaintiff's counsel filed a motion to suppress plaintiff's warrantless arrest. The

[5] Winterscheidt's report dated July 17, 2023 contained photographs which showed Mielcarek's email inbox and subject lines but did not show the content of any email.

motion alleged that (1) Winterscheidt's report acknowledged that the emails concerned subpoenas, notices of hearing, and document requests; (2) the emails appeared professional in manner; (3) Winterscheidt took photographs of only limited information provided by Mielcarek; (4) the arresting GPD officers had no evidence of the emails when they detained plaintiff; and (5) plaintiff's warrantless arrest was unlawful because the alleged crime was not committed in the arresting officers' view.

On August 23, 2024, Johnson County District Judge Thomas M. Sutherland heard argument on the legality of plaintiff's arrest. He stated that plaintiff's counsel was likely correct that the arrest did not technically comply with K.S.A. § 22-2401 and that the State's contrary argument under § 22-2401(d) was incorrect.[6] On November 27, 2024, Judge Sutherland again addressed the arrest issue. Judge Sutherland stated that he had reviewed the matter "every which way but loose" and tended to agree with the defense that the arrest was not legal.

On June 11, 2025, the State moved to dismiss the criminal case against plaintiff, and on June 12, 2025, the court dismissed it without prejudice. A month later, the court entered an order of expungement concerning plaintiff's arrest and prosecution.

On May 26, 2026, plaintiff filed his petition for damages in this case. Under 42 U.S.C. § 1983, plaintiff alleges (1) unlawful seizure and arrest in violation of the Fourth Amendment of the U.S. Constitution by Winterscheidt and Ahsens (Count I); (2) malicious prosecution in violation of the Fourth Amendment by the individual defendants and the City of Olathe (Count II); (3) retaliatory arrest and enforcement in violation of the First Amendment by all individual

[6] Section 22-2401 provides the circumstances under which a law enforcement officer may arrest a person. Under § 22-2401(d), a law enforcement officer may arrest a person for "[a]ny crime, except a traffic infraction or cigarette or tobacco infraction, [which] has been or is being committed by the person in the officer's view."

defendants (Count III); and (4) failure to intervene in preventing constitutional violations by Winterscheidt (Count IV). Against the City of Olathe, plaintiff alleges municipal liability under Monell v. Dep't of Soc. Servs., 436 U.S. 658 (1978) (Count V). Plaintiff brings three additional counts under Kansas state law: (1) false arrest and false imprisonment against Winterscheidt and the City of Olathe (Count VII);[7] (2) malicious prosecution against the individual defendants and the City of Olathe (Count VIII); and (3) negligence or gross negligence against the individual defendants and the City of Olathe under the Kansas Tort Claims Act ("KTCA"), K.S.A. § 75-6103 (Count IX).[8]

Plaintiff seeks compensatory damages against all of the Olathe defendants and punitive damages against the individual defendants.

## Analysis

The Olathe defendants argue that the complaint contains excessive references to irrelevant matters and does not comply with Rule 8(a)(2), Fed. R. Civ. P., which requires a "short plain statement." They further argue that plaintiff fails to state a claim because he relies on impermissible group pleading and thereby does not provide adequate notice to each defendant. They also argue that the statute of limitations bars all of plaintiff's claims except malicious prosecution (Counts II and VIII). The individual defendants argue that plaintiff fails to state a claim for malicious prosecution under Section 1983 (Count II) and that they are entitled to qualified immunity. The City argues that plaintiff fails to state a claim under Monell (Count V).

---

[7] Count VI alleged municipal liability under Monell against the City of Gardner. The Court dismissed VI in a separate order. See Memorandum And Order (Doc. #37) filed October 28, 2026 at 16.

[8] K.S.A. § 75-6103 states that "[s]ubject to limitations of this act, each government entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the law of this state."

The individual defendants also argue that they are entitled to discretionary function immunity under the Kansas Tort Claims Act, K.S.A. § 75-6104 (Counts VII–IX).

## I. Pleading Deficiencies

The Olathe defendants argue that the Court should dismiss the complaint under Rule 8(a), Fed. R. Civ. P., because it contains excessive references to irrelevant matters and runs counter to Rule 8's mandate for a "short and plain statement of the claim showing that the pleader is entitled to relief." Plaintiff counters that the complaint gives defendants fair notice of what each defendant allegedly did. The Court agrees that the complaint is unnecessarily lengthy and repetitive, but because plaintiff is proceeding pro se, the Court holds him to a less stringent standard than trained lawyers. See Haines, 404 U.S. at 520–21. Furthermore, while the complaint is lengthy, it is not difficult to follow. The Court also considers that the complaint alleges nine counts against 13 defendants and describes events that occurred over the course of three years. On this ground, the Court declines to dismiss the complaint or to strike irrelevant or repetitive material.

Defendants also argue that, in violation of Robbins v. Oklahoma, 519 F.3d 1242, 1248 (10th Cir. 2008), the complaint relies on impermissible group pleading and does not give adequate notice as to the nature of the claims against each defendant. Plaintiff responds that the complaint meets the Robbins standard through a numbered chronology, separate party allegations, separately labeled counts and incorporated records. Several allegations in the complaint describe conduct by "defendants" without specifying which defendants engaged in the conduct. The Court will disregard allegations which attribute conduct to unspecified "defendants." Id. at 1249–50 (in Section 1983 cases "it is particularly important" that the complaint make clear "exactly *who* is alleged to have done *what* to *whom*").

## II. Statute Of Limitations—Counts I, VII And IX

The Olathe defendants argue that Counts I, III through V, VII and IX are barred by the statute of limitations. Plaintiff concedes that false arrest and false imprisonment claims (Counts I and VII) accrue when detention becomes supported by legal process, but he argues that many of his claims are based on his continued prosecution and the officers' post-arrest conduct.

### A. Count I

Section 1983 provides a federal civil cause of action against state officials for the "deprivation of any rights, privileges, or immunities secured by the Constitution." 42 U.S.C. § 1983. For purposes of Section 1983, the Court borrows the statute of limitations from the personal injury laws of the state in which the claim arose. Wallace v. Kato, 549 U.S. 384, 387 (2007); McCarty v. Gilchrist, 646 F.3d 1281, 1289 (10th Cir. 2011). Accordingly, for Section 1983 claims arising in Kansas, the Court applies a two-year statute of limitations. See K.S.A. § 60–513(a)(4). Federal law determines the date on which the claim accrues and, therefore, when the limitations period starts to run. Wallace, 549 U.S. at 388.

Count I claims that Winterscheidt and Ahsens violated plaintiff's Fourth Amendment rights when they requested that the GPD arrest him on July 17, 2023, without a warrant or probable cause. Plaintiff's claim under the Fourth Amendment for unlawful arrest without legal process is analogous to a tort claim for false arrest or false imprisonment. Mondragon v. Thompson, 519 F.3d 1078, 1082 (10th Cir. 2008); see also Myers v. Koopman, 738 F.3d 1190, 1194 (10th Cir. 2013) (courts look to common-law torts as analogies to determine accrual date of Section 1983 claims). A Fourth Amendment claim for false arrest begins to accrue when the alleged false arrest ends, which for statute of limitations purposes, is when the individual is released or when the detention becomes pursuant to legal process. Mondragon, 519 F.3d at 1082–83. After legal

process begins, any remaining constitutional claim is analogous to a malicious prosecution claim. Id. at 1083.

At the latest, plaintiff's Fourth Amendment claim for unlawful arrest accrued on July 19, 2023, when the Johnson County court released him on bond. Plaintiff filed the instant lawsuit on May 26, 2026—almost three years after his Fourth Amendment false arrest claim accrued. Therefore, the statute of limitations bars his Fourth Amendment claim for unlawful arrest under Section 1983 against Winterscheidt and Ahsens. The Court dismisses Count I.

B. Counts III, IV And V

Because the Olathe defendants do not fully develop their argument that Counts III, IV and V are time-barred, the Court overrules their motion to dismiss those counts based on the statute of limitations.

C. Count VII

Count VII alleges false arrest and false imprisonment under Kansas law by Winterscheidt and the City of Olathe. The statute of limitations for false arrest and false imprisonment is one year. K.S.A. § 60-514(b). The right to sue for false arrest and false imprisonment begins when the detention ends. Arceo v. City of Junction City, Kan., 182 F. Supp. 2d 1062, 1087 (D. Kan. 2002). At the latest, plaintiff's state claims for false arrest and false imprisonment began to accrue on July 19, 2023, when plaintiff was released on bond. Therefore, the statute of limitations for his state claims of false arrest and false imprisonment expired on July 19, 2024. Because plaintiff did not file his complaint until May 26, 2026, Count VII is time-barred. The Court therefore dismisses Count VII against Winterscheidt and the City of Olathe.

D. Count IX

Count IX alleges negligence under Kansas law against the individual defendants and the

City of Olathe for failing to exercise reasonable care in determining whether probable cause existed before arresting plaintiff and in continuing to seek and support his prosecution. Under Kansas law, personal injury claims, including negligence claims, are subject to a two-year statute of limitations. See K.S.A. § 60-513(a)(4). A negligence claim accrues when the fact of injury becomes reasonably ascertainable to the injured party. Id., § 60-513(b). Plaintiff was arrested on July 17, 2023 and immediately argued that he did not violate the law because his communications related to ongoing civil litigation. On July 18, 2023, the Johnson County District Attorney's Office charged him with violating a protection-from-stalking order. Because his negligence claim became reasonably ascertainable to him when he was arrested and charged, but he did not file a complaint until May 26, 2026, Count IX's negligence claim against the individual defendants and the City of Olathe is time-barred.[9]

## III. Qualified Immunity—Counts II Through IV

Winterscheidt, Ahsens, Smith, Anderson and Butaud argue that they are entitled to qualified immunity as to plaintiff's constitutional claims under Section 1983 (Counts I through IV).[10] Government officials sued in their individual capacities are entitled to qualified immunity from suit and liability for civil damages for performing discretionary functions so long as their conduct does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." Pearson v. Callahan, 555 U.S. 223, 231 (2009) (quoting

---

[9] To the extent plaintiff contends that his claim against Anderson and Butaud accrued in November of 2023, when Anderson provided the content of the emails to the prosecutor, and Butaud directed the prosecutor to a specific message he described as containing a personal statement from plaintiff to Mielcarek, the claim is still time-barred because plaintiff did not file his petition until May 26, 2026.

[10] Because the Court dismissed Count I as time-barred, the Court does not address Count I in its discussion of qualified immunity.

Harlow v. Fitzgerald, 457 U.S. 800, 818 (1982)); Wilson v. Stoltenberg, 182 F.4th 903, 910 (10th Cir. 2026). In resolving a motion to dismiss based on qualified immunity, the Court must consider whether the facts that plaintiff has alleged make out a violation of a constitutional right, and whether the right at issue was clearly established at the time of defendants' alleged misconduct. Brown v. Montoya, 662 F.3d 1152, 1164 (10th Cir. 2011). The Court has discretion to decide which of the two prongs of the qualified immunity analysis to address first. Pearson, 555 U.S. at 236.

Whether a right is "clearly established" is an objective test: the relevant, dispositive inquiry is "whether it would be clear to a reasonable [individual] that his conduct was unlawful in the situation he confronted." Brown, 662 F.3d at 1164 (quoting Stearns v. Clarkson, 615 F.3d 1278, 1282 (10th Cir. 2010)). For the law to be clearly established, ordinarily "there must be a Supreme Court or Tenth Circuit decision on point, or the clearly established weight of authority from other courts must have found the law to be as the plaintiff maintains." Id.

Plaintiff has the burden of showing both that defendant violated a constitutional right and that the right was clearly established at the time of the alleged violation. Wilson, 182 F.4th at 910–11. He "must do more than identify in the abstract a clearly established right and allege that the defendant has violated it;" he "must articulate the clearly established constitutional right and the defendant's conduct which violated the right with specificity." Green v. Post, 574 F.3d 1294, 1300 (10th Cir. 2009) (quoting Tonkovich v. Kan. Bd. of Regents, 159 F.3d 504, 517 (10th Cir. 1998)).

Qualified immunity balances two important interests—the need to hold public officials accountable when they exercise power irresponsibly and the need to shield officials from harassment, distraction and liability when they perform their duties reasonably. Pearson, 555 U.S. at 232. Because qualified immunity is "an immunity from suit rather than a mere defense to

liability . . . it is effectively lost if a case is erroneously permitted to go to trial." Id. (quoting Mitchell v. Forsyth, 472 U.S. 511, 526 (1985)). The driving force behind the qualified immunity doctrine is a desire to ensure that "insubstantial claims against government officials will be resolved prior to discovery." Id. (quoting Anderson v. Creighton, 483 U.S. 635, 640 n.2 (1987)). Accordingly, the Supreme Court has "stressed the importance of resolving immunity questions at the earliest possible stage in litigation." Id. (quoting Hunter v. Bryant, 502 U.S. 224, 227 (1991) (per curiam)).

A. Malicious Prosecution—Count II

In Count II, plaintiff alleges that in violation of the Fourth Amendment, the individual defendants caused his arrest and continued prosecution without probable cause. Defendants argue that plaintiff fails to state a claim for malicious prosecution and that they are entitled to qualified immunity.

To prove a Fourth Amendment malicious prosecution claim, plaintiff must establish that (1) defendant caused plaintiff's continued confinement or prosecution; (2) the original action terminated in favor of plaintiff; (3) no probable cause supported the original arrest, continued confinement, or prosecution; (4) defendant acted with malice; and (5) plaintiff sustained damages. Shrum v. Cooke, 60 F.4th 1304, 1310 (10th Cir. 2023); Margheim v. Buljko, 855 F.3d 1077, 1085 (10th Cir. 2017).

Defendants argue that plaintiff fails to state a claim for malicious prosecution because his arrest and prosecution were supported by probable cause. Probable cause exists if facts and circumstances within the arresting officer's knowledge and of which he or she has reasonably trustworthy information are sufficient to lead a prudent person to believe that the arrestee has committed or is committing an offense. Jones v. City and County of Denver, 854 F.2d 1206, 1210

(10th Cir. 1988).

Plaintiff concedes that on June 2, 2023, the Johnson County District Court granted Mielcarek's request for a protection-from-stalking order against plaintiff, prohibiting him from having any contact with Mielcarek. He also concedes that despite the protective order, he sent Mielcarek court-related documents and legal communications in connection with litigation which he had initiated against Katafias. Plaintiff argues that Kansas statutes exempted his litigation-related communications from the no-contact order. He relies on K.S.A. § 21-5924(c), which provides that a protective order does not prohibit "an attorney, or any person acting on such attorney's behalf, who is representing the defendant in any civil or criminal proceeding, from contacting the protected party for a legitimate purpose within the scope of the civil or criminal proceeding." He also relies on K.S.A. § 60-31a06(g), which states as follows:

> A no contact or restraining provision in a protective order issued pursuant to this section shall not be construed to prevent: (1) Contact between the attorneys representing the parties; . . . or (3) a defendant or defendant's attorney from sending the plaintiff copies of any legal pleadings filed in court relating to civil or criminal matters presently relevant to the plaintiff.

Plaintiff's conduct, as alleged in the complaint, did not fall within any exception to the protection-from-stalking order. When plaintiff sent Mielcarek the emails, he was not an attorney, acting on behalf of an attorney who was representing Katafias in civil litigation, or representing himself in a criminal case. K.S.A. § 21-5924(c); see also State v. Warren, No. 121,209, 466 P.3d 1234 (table), 2020 WL 4035062, at *3–4 (Kan. Ct. App. July 17, 2020) (per curiam) (Section 21-5924(c) provides exception for defendant's attorney or any person acting on attorney's behalf—not on defendant's behalf); Warren v. Williams, No. 23-3251-JWL, 2024 WL 1655370, at *3 (D. Kan. Apr. 17, 2024) (to not violate Fifth and Sixth Amendments, exception in Section 21-5924(c) must apply to pro se criminal defendants).

The exception for "contact between the attorneys representing the parties" in K.S.A. § 60-31a06(g)(1) also does not apply because plaintiff and Mielcarek were not attorneys. Because plaintiff was not the defendant in his lawsuit against Katafias, the exception for "a defendant or defendant's attorney" also does not apply. Id., § 60-31a06(g)(3). Even assuming that plaintiff was the defendant in litigation involving Katafias and Mielcarek, the exception to the no-contact order would only permit him to send "copies of legal pleadings." Id. The narrow exception would not permit him to engage in other legal communications, as he admittedly did. Plaintiff does not meet his burden to show that his confinement or prosecution was unsupported by probable cause.

Citing Franks v. Delaware, 438 U.S. 154 (1978), and Pierce v. Gilchrist, 359 F.3d 1279 (10th Cir. 2004), plaintiff also argues that individual defendants violated the Fourth Amendment by submitting, approving and failing to correct probable cause materials that omitted material, exculpatory facts, including the context of the communications, plaintiff's pro se status in the litigation, the statutory exemptions and the absence of threats in the communications. To establish a Fourth Amendment violation under Franks, defendant must show that (1) an officer's affidavit in support of the warrant contains a reckless misstatement or omission that (2) is material because without it, the court could not have lawfully issued the warrant. United States v. Rosenschein, 136 F.4th 1247, 1257–58 (10th Cir. 2025); Kapinski v. City of Albuquerque, 964 F.3d 900, 905 (10th Cir. 2020). Plaintiff's argument fails for the same reasons discussed above: given the narrow exceptions to the no-contact order, plaintiff does not meet his burden to show that had the affidavit included the context of the communications, his pro se status in the litigation, the statutory exemptions and the absence of threats in the communications, the Johnson County district judge would not have issued the warrant.

Furthermore, the complaint does not support plaintiff's argument that the individual defendants withheld from the criminal court material or exculpatory information related to plaintiff's civil litigation involving Mielcarek. The complaint alleges as follows:

> The affidavit [in support of the criminal complaint] stated that Mielcarek claimed Plaintiff contacted her by email regarding an upcoming court date while Plaintiff was representing himself. . . . The affidavit expressly acknowledged that the alleged emails were court-related. It stated that Mielcarek showed Winterscheidt several emails from Plaintiff, that all were "regarding court," and that the topics included "subpoenas for court, notice of hearing and requesting documents for the upcoming hearings." . . . The affidavit also stated that the emails appeared professional in manner. Despite those facts, the affidavit treated the emails as criminal contact because the protection order prohibited email contact.

Petition For Damages And Civil Rights Violations (Doc. #1-2) filed July 1, 2026 at 20–21, ¶¶ 61–63. The affidavit alerted the Johnson County district judge that plaintiff's communications with Mielcarek related to ongoing litigation in which he was representing himself. While the affidavit did not address the exemptions in K.S.A. §§ 60-31a06(g) and 21-5924(c), the criminal complaint cited K.S.A. §§ 60-31a05, 60-31a06 and 21-5924, thereby alerting the court to the relevant statutory provisions. The complaint does not support plaintiff's argument that the individual defendants withheld material information from the district judge. Plaintiff has not met his burden to show that the individual defendants violated his Fourth Amendment rights. For substantially the same reasons, plaintiff has not met his burden to show that clearly established law made the officers' conduct unlawful. See District of Columbia v. Wesby, 583 U.S. 48, 63 (2018) (existing law must have placed constitutionality of officer's conduct "beyond debate"); Painter v. The City of Albuquerque, 383 F. App'x 795, 801 (10th Cir. 2010) (plaintiff must identify legal authority that makes it "apparent" that reasonable officer confronted with facts would have known that arrest was unlawful). The individual defendants are therefore entitled to qualified immunity on Count

II.[11] The Court dismisses Count II against the individual defendants.

B. First Amendment Retaliation—Count III

In Count III, plaintiff alleges a First Amendment claim for retaliatory arrest and enforcement by the individual defendants. Defendants argue that plaintiff fails to state a claim for First Amendment retaliation and that they are entitled to qualified immunity.

To establish a First Amendment retaliation claim, a plaintiff must show that (1) he was engaged in constitutionally protected activity, (2) the government's actions caused him injury that would chill a person of ordinary firmness from continuing to engage in that activity, and (3) the government's actions were substantially motivated as a response to his constitutionally protected conduct. See Nielander v. Bd. of Cnty. Comm'rs of Cnty. of Republic, Kan., 582 F.3d 1155, 1165 (10th Cir. 2009). Where the adverse action takes the form of an arrest and subsequent prosecution, plaintiff must show an absence of probable cause. Hartman v. Moore, 547 U.S. 250, 252, 265–66 (2006) (retaliatory prosecution); Nieves v. Bartlett, 587 U.S. 391, 401–02 (2019) (retaliatory arrest). In other words, probable cause bars a First Amendment retaliation claim. Fenn v. City of Truth or Consequences, 983 F.3d 1143, 1149 (10th Cir. 2020).

Plaintiff has not shown a lack of probable cause. Plaintiff concedes that he was subject to Mielcarek's no-contact order and that despite the order, he sent her court filings and other legal communications. Plaintiff argues that he was permitted to send litigation-related communications based on statutory exceptions and therefore, the individual defendants lacked probable cause to arrest and prosecute him for violation of the no-contact order. As discussed above, the statutory

[11] The Court dismissed Count I—alleging Fourth Amendment false arrest—as time-barred. Even assuming that Count I was not time-barred, the Court would dismiss Count I against Winterscheidt and Ahsens for the same reasons it dismisses Count II, i.e. the individual defendants are entitled to qualified immunity on Count II.

exceptions under K.S.A. §§ 60-31a06(g) and 21-5924(c) do not apply to plaintiff under the circumstances alleged. For this reason, plaintiff does not allege that the individual defendants violated his First Amendment rights, much less that such rights were clearly established at the time of the violation. Pearson, 555 U.S. at 231. The individual defendants are entitled to qualified immunity on Count III.

C. Failure To Intervene—Count IV

In Count IV, plaintiff alleges that Winterscheidt failed to intervene to stop his unlawful arrest and prosecution in violation of the First, Fourth and Fourteenth Amendments. Winterscheidt argues that plaintiff fails to state a claim under Section 1983 and that she is entitled to qualified immunity.

To be liable for failure to intervene, the officer must have observed or had reason to know of a constitutional violation and have had a realistic opportunity to intervene. Jones v. Norton, 809 F.3d 564, 576 (10th Cir. 2015). As discussed above, the complaint does not allege a constitutional violation. Without either an unlawful seizure or prosecution, plaintiff's claim that Winterscheidt is liable for a failure to intervene also fails. See id. Plaintiff does not state a claim upon which relief is available for failure to intervene in violation of the First, Fourth and Fourteenth Amendments, much less that such rights were clearly established at the time of the alleged violations. Pearson, 555 U.S. at 231. Winterscheidt therefore is entitled to qualified immunity and the Court dismisses Count IV against her.

## IV. Municipal Liability—Counts II And V

Counts II and V allege that when officers arrested plaintiff and pursued his prosecution, the City of Olathe violated his constitutional rights through its policies, customs, practices, final-policymaker decisions, failure to train, failure to supervise, failure to discipline and ratification.

More specifically, the complaint alleges that the City maintained a practice of treating no-contact language in protection orders as an absolute criminal prohibition even where the communications were court related and failed to train and supervise officers on how to enforce protections orders where statutory exceptions apply. The City of Olathe argues that plaintiff's claim of municipal liability fails because the complaint contains only generalized assertions, plaintiff does not establish an underlying constitutional violation by any of the City's officers and a failure-to-train theory requires showing a pattern of s similar violations.

A municipality can be directly sued under Section 1983 when its officers commit constitutional violations in accordance with its official policy or custom. Monell, 436 U.S. at 690–91. To state a claim for Monell liability against a municipality, plaintiff must allege that (1) an official policy or custom (2) caused his constitutional injury and (3) the policy or custom was "enacted or maintained with deliberate indifference to an almost inevitable constitutional injury." See Schneider, 717 F.3d at 769. Liability for municipal policy or custom may be imposed only when the enforcement of the municipal policy or custom was "the moving force" behind the violation of a federally protected right. Bd. of Cnty. Comm'rs of Bryan Cnty., Okla. v. Brown, 520 U.S. 397, 400 (1997).

Count V alleges a Monell claim against the City of Olathe based on a violation of his constitutional rights under the First, Fourth and Fourteenth Amendments. Plaintiff relies on the same violations he asserts in Counts I through IV for unlawful arrest, unreasonable seizure, retaliatory enforcement, malicious prosecution and failure to intervene. Plaintiff's Monell claim against the City fails because the complaint does not establish that any individual officer violated plaintiff's constitutional rights. As discussed above, based on the facts alleged in the complaint, none of the exceptions to the violation of a protective order in K.S.A. §§ 21-5924(c) and 60-

31a06(g) apply. Plaintiff is not an attorney, he was not acting on an attorney's behalf, he was not a defendant in the litigation involving Katafias and Mielcarek and he was not a criminal defendant. Because he does not establish that any of the individual defendants violated his constitution rights in Counts I through IV, his Monell claim likewise fails. See Monell, 436 U.S. at 694 (to plead municipal liability, plaintiff must allege constitutional violation by municipal employee).[12] The Court dismisses Count V against the City of Olathe.[13]

## V. Remaining State Claims—Counts VIII And IX

### A. Count VIII – Malicious Prosecution

Count VIII alleges malicious prosecution under Kansas law against the individual defendants and the City of Olathe. Defendants argue that plaintiff fails to state a claim for malicious prosecution and that they are entitled to discretionary function immunity.

To state a claim for malicious prosecution under Kansas law, plaintiff must prove that (1) defendant initiated, continued or procured the criminal proceeding against plaintiff; (2) in so doing, defendant acted without probable cause; (3) defendant acted with malice; (4) the proceeding terminated in favor of plaintiff; and (5) plaintiff sustained damages. Lindenman v. Umscheid, 255 Kan. 610, 620, 875 P.2d 964, 974 (1994). A defendant typically institutes or procures a criminal proceeding within the meaning of the first element by signing a criminal complaint against plaintiff. Crow v. United States, 659 F. Supp. 556, 571 (D. Kan. 1987). Otherwise, defendant

---

[12] Plaintiff's Monell claim against the City of Olathe based on a Fourth Amendment claim for false arrest (Count I) also fails because it is time-barred. See Cowdrey v. City of Eastborough, Kan., 730 F.2d 1376, 1378 n.3 (10th Cir. 1984) (Monell claim subject to two-year limitations period); Herrera v. City of Espanola, 32 F.4th 980, 1000 (10th Cir. 2022) (in context of municipal liability, plaintiff has no cause of action for injury that occurred outside limitations period).

[13] Because plaintiff's Monell claim in Count II duplicates his Monell claim in Count V, the Court dismisses Count II against the City for the same reasons.

must be active in continuing the prosecution, such as by urging further prosecution. Allin v. Schuchmann, 886 F. Supp. 793, 798 (D. Kan. 1995).

Plaintiff fails to allege a claim upon which relief can be granted because he does not show that the individual defendants acted without probable cause. See Iqbal, 556 U.S. at 679 (where well-pleaded facts do not permit court to infer more than mere possibility of misconduct, pleading has not shown that pleader is entitled to relief). As discussed supra, § III.A, based on the circumstances alleged in the complaint, none of the statutory exceptions to the protection-from-stalking order apply to plaintiff's conduct. Plaintiff does not establish that the individual defendants acted without probable cause. Given these circumstances, the complaint fails to state a claim for malicious prosecution against the individual defendants. As best the Court can ascertain, plaintiff's malicious prosecution claim against the City is based on vicarious liability, i.e., the acts of the individual defendants.[14] Because the Court finds that plaintiff fails to state a claim for malicious prosecution against the individual defendants, it follows that plaintiff also fails to state a claim against the City for malicious prosecution.

The Court therefore dismisses Count VIII against the individual defendants and the City.[15]

---

[14] As to the City, Count VIII alleges only that "[t]he municipal Defendants are liable to the extent permitted by the Kansas Tort Claims Act and applicable notice requirements." Petition For Damages And Civil Rights Violations (Doc. #4-1) filed July 1, 2026 at ¶ 292. The Kansas Tort Claims Act, K.S.A. § 75-6103(a), states that "[s]ubject to the limitations of this act, each governmental entity shall be liable for damages caused by the negligent or wrongful act or omission of any of its employees while acting within the scope of their employment under circumstances where the governmental entity, if a private person, would be liable under the law of this state."

[15] Because the Court finds that plaintiff fails to state a claim for malicious prosecution under Kansas law, the Court need not consider defendants' argument that they are entitled to discretionary function immunity under the Kansas Tort Claims Act, K.S.A. § 75-6104.

B. Count IX—Negligence/Gross Negligence

Count IX alleges that the individual defendants and the City of Olathe were negligent in failing to exercise reasonable care in determining whether probable cause existed before arresting plaintiff and in continuing to seek and support his prosecution. Defendants argue that this claim is time-barred and that they are entitled to discretionary function immunity under the Kansas Tort Claims Act, K.S.A. § 75-6104(a)(3). The Court dismissed this claim as time-barred. See supra, § II.C.

Even if plaintiff's negligence claim was not time-barred, the individual defendants are entitled to discretionary function immunity under the Kansas Tort Claims Act, K.SA. § 75-6104(a)(5). See Beattie v. Smith, 543 Fed. Appx. 850, 860 (10th Cir. 2013) (applying Kansas law and finding officers' determination that probable cause existed based on investigation is discretionary function). See also Schreiner v. Hodge, 315 Kan. 25, 41, 504 P.3d 410, 425 (2022) (officers' reasonable suspicion determination insulated from tort liability under discretionary function exception).[16]

## VI. State Claims Against Mielcarek And Katafias—Counts VII–IX

Given the foregoing rulings, the only remaining claims are state law claims against

[16] In addition, plaintiff fails to state a claim for negligence. To state a claim for negligence under Kansas law, plaintiff must prove (1) the existence of a duty, (2) breach of that duty, (3) injury and (4) a causal connection between the duty breached and the injury suffered. Nero v. Kan. State Univ., 253 Kan. 567, 571, 861 P.2d 768, 772 (Kan. 1993); Baker v. Braum's, Inc., No. 24-3122, 2026 WL 3372852, at *2 (10th Cir. Nov. 6, 2026). As discussed above, based on the allegations in the complaint, none of the exceptions to the protective order applied to plaintiff's emails to Mielcarek, and even if an exception arguably applied, it was not unreasonable for the individual defendants to believe that probable cause existed to arrest and prosecute plaintiff. Therefore, the facts alleged in the complaint do not establish that the individual defendants breached a duty of care which they owed to plaintiff. See Bark v. United States, No. 10-cv-01558-LTB-MEH, 2012 WL 364075, at *4 (D. Colo. Feb. 1, 2012) (no breach of duty where officer had probable cause to arrest).

Mielcarek and Katafias for false arrest and imprisonment (Count VII), malicious prosecution (Count VIII) and negligence (Count IX). Plaintiff and Mielcarek dispute whether plaintiff has accomplished service of process on Mielcarek. On October 20, 2026, U.S. Magistrate Judge Angel D. Mitchell granted plaintiff's motion to lift the discovery stay for the limited purpose of permitting plaintiff to obtain occupancy records related to an address in Pensacola, Florida, where Mielcarek stated she resided.

The Court has supplemental jurisdiction over state law claims which are integrally related to a federal claim, but it may decline to exercise supplemental jurisdiction if it dismisses the federal law claims. See 28 U.S.C. § 1367(a), (c)(3); see also Horocofsky v. City of Lawrence, Kan., 191 F.4th 1226, 1247 (10th Cir. 2026) (reversing district court's grant of summary judgment as to state claims and remanding for district court to consider whether to dismiss state-law claims after it fully disposed of federal claims). The Court usually dismisses supplemental state law claims after all federal claims have been dismissed, particularly when the federal claims are dismissed before trial. United States v. Botefuhr, 309 F.3d 1263, 1273 (10th Cir. 2002) (suggesting district court should retain jurisdiction only if parties have expended great deal of time and energy on state law claims). The Court considers the nature and extent of pretrial proceedings, judicial economy, convenience and whether retaining jurisdiction would serve fairness. Anglemyer v. Hamilton Cnty. Hosp., 58 F.3d 533, 541 (10th Cir. 1995). In the usual case, the balance of factors points toward declining to exercise jurisdiction over remaining state law claims. McWilliams v. Jefferson Cnty., 463 F.3d 1113, 1118 (10th Cir. 2006).

Here, Mielcarek and Katafias have not yet answered the complaint and the parties have not engaged in discovery. At this preliminary stage, the Court finds no persuasive reason to exercise supplemental jurisdiction to decide the merits of plaintiff's state law claims against Mielcarek and

Katafias. See Thatcher Enter. v. Cache Cnty. Corp., 902 F.2d 1472, 1478 (10th Cir. 1990) (absent compelling reasons to contrary, notions of comity and federalism demand that state court try its own lawsuits). Having determined that plaintiff's federal claims must be dismissed, the Court declines to exercise supplemental jurisdiction over his remaining state law claims (Counts VII through IX) against Mielcarek and Katafias based on considerations of judicial economy, convenience, fairness and comity. See Bauchman for Bauchman v. W. High Sch., 132 F.3d 542, 549 (10th Cir. 1997).[17]

**VII. Leave To Amend The Complaint**

In opposing defendants' motion to dismiss, plaintiff requests limited leave to amend the complaint under Rule 15(a)(2), Fed. R. Civ. P. Plaintiff argues that amendment would allow him to "shorten the chronology, identify each challenged communication and filed pleading, separate initial-arrest claims from prosecution-based claims, and refine the Defendant-specific and municipal theories." Plaintiff's Response In Opposition To City Of Olathe Defendants' Motion To Dismiss And Memorandum In Support (Doc. #15) filed July 28, 2026 at 11.

The Court overrules plaintiff's request to amend the complaint. A motion for leave to amend must be filed in a separate document and plaintiff must attach as an exhibit a copy of the proposed amended complaint. See Local Rules 7.1(a), 15.1(a)(2). Plaintiff made his request to amend in the second-to-last paragraph of his response to defendants' motion to dismiss and did not attach a proposed amended complaint. Furthermore, plaintiff has had ample time and opportunity to amend his complaint and has declined to do so. See Fed. R. Civ. P. 15(a)(1)(B)

---

[17] The Court considered whether to remand plaintiff's state law claims against the Olathe defendants. The balance of factors—including significant overlap between the federal and state claims, time and energy the parties have spent briefing the issues, judicial economy and fairness—weighed in favor of retaining jurisdiction in order to address the fully-briefed motion to dismiss.

(plaintiff may file amended complaint as of right within 21 days after defendants filed motion to dismiss). Plaintiff does not identify the subject matter of any proposed amendment, and open-ended leave to amend to add unspecified allegations would defeat the objectives of Rule 1, Fed. R. Civ. P., by unnecessarily prolonging this litigation and increasing its cost with no incremental progress toward the just determination of this action.

**IT IS THEREFORE ORDERED** that City of Olathe Defendants' Motion To Dismiss And Memorandum In Support (Doc. #9) filed July 8, 2026 is **SUSTAINED**. Counts I through V and Counts VII through IX of plaintiff's complaint against the City of Olathe, Kansas, Angela Winterscheidt, Robert Ahsens, David Smith, Carl Anderson and Mike Butaud, are dismissed. No claims against the Olathe defendants remain in the case.

**IT IS FURTHER ORDERED** that Counts VII, VIII and IX, which advance state law claims against Mielcarek and Katafias, are remanded to state court.

Dated this 19th day of November, 2026 at Kansas City, Kansas.

s/ Kathryn H. Vratil
KATHRYN H. VRATIL
United States District Judge